ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| AIDA CELESTE GORDO GONZÁLEZ<br><br>Apelante<br><br>v.<br><br>FERNANDO LUIS SALICHS VELÁZQUEZ<br><br>Apelado | TA2026AP00266 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Número: D AC2014-3094<br><br>Sobre: Liquidación de Sociedad de Bienes Gananciales |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 13 de mayo de 2026.

Comparece ante esta Curia, la señora Aida Celeste Gordo González (Sra. Gordo González o Apelante) y nos solicita que revoquemos la *Sentencia Enmendada* que el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) notificó, el 10 de febrero de 2026.[1] En su pronunciamiento, el foro primario ordenó la liquidación de la comunidad de bienes gananciales integrada por las partes y en particular concedió a favor del señor Fernando Luis Salichs Velázquez (Sr. Salichs Velázquez o Apelado) un crédito de $14,018.18.

Por los fundamentos que exponemos a continuación, confirmamos el dictamen impugnado.

---

[1] Surge del referido dictamen que, la enmienda fue a los fines de corregir el valor total de los bienes, los cómputos matemáticos impactados por dicha corrección y la tasa de interés aplicable hasta que la deuda sea satisfecha.

## I.

Las partes contrajeron matrimonio el 11 de agosto de 1990 y tras su disolución, el 12 de diciembre de 2012, la Sra. Gordo González incoó la *Demanda* de epígrafe en contra del Sr. Salichs Velázquez. En ella, solicitó la liquidación de los bienes muebles e inmuebles gananciales adquiridos durante la vigencia del matrimonio, así como, cuentas bancarias y de inversiones, planes de retiro, muebles y el hogar conyugal, entre otros.

En reacción, el Sr. Salichs Velázquez contestó la demanda en la cual admitió la mayoría de las alegaciones y, además, instó una reconvención. En esta última, añadió varios bienes muebles sujetos a división, a saber: dos vehículos de motor; los intereses devengados durante el matrimonio de una cuenta de inversión privativa de la Sra. Gordo González; ropa y artículos personales del Sr. Salichs Velázquez, presuntamente valorados en $3,500.00; y un crédito por el exceso pagado en la porción del 50% de su obligación hipotecaria.

Al replicar la reconvención, la Sra. Gordo González negó lo allí alegado y señaló que, luego de haber asumido capacidad económica, al Apelado le corresponde pagar el 100% de la participación del menor en la obligación hipotecaria. Con respecto a los artículos personales cuyo valor reclamó en la reconvención, la Apelante aseguró haber entregado la ropa y solicitó un listado de los artículos que entiende están en su posesión previo a su devolución.

Finalizado el descubrimiento de prueba, el TPI celebró la conferencia con antelación al juicio, a la cual comparecieron ambas partes y sus respectivas representaciones legales. En lugar de presentar un informe de conferencia con antelación a juicio, la Apelante instó un petitorio sumario y el Apelado, además de oponerse, presentó su propia moción dispositiva. Evaluados los planteamientos de ambas partes en corte abierta, el TPI se negó a resolver sumariamente el asunto por entender que existen hechos

en controversia, además por considerar ambos petitorios tardíos.

Ese mismo día, y según pautado, el foro primario celebró el juicio en su fondo. Aquilatada la extensa prueba documental y testifical,[2] el foro primario formuló las siguientes determinaciones de hechos:

1. La demandante y el demandado contrajeron matrimonio el 11 de agosto de 1990, bajo el régimen de la Sociedad Legal de Bienes Gananciales y procrearon dos hijos: Ashley Nicole Salichs Gordo y Sebastián Armin Salichs Gordo.

2. El matrimonio entre las partes fue disuelto por Sentencia de divorcio el 16 de enero de 2013 en el caso D DI2012-1644 del Tribunal de Primera Instancia, Sala de Bayamón.

3. Durante el matrimonio, las partes, adquirieron bienes muebles e inmuebles, al igual que deudas las cuales aún no han sido divididas y/o distribuidas.

4. Durante el matrimonio las partes adquirieron la siguiente propiedad Inmueble localizada en Guaynabo, Puerto Rico, que en su momento fue el hogar conyugal, con un valor de tasación de $286,000.00.

   "Rústica": Parcela de terreno radicada en el Barrio Guaraguao del Municipio de Guaynabo. Compuesta de Seis Punto Mil Setecientos Veintinueve Cuerdas (6.1729 cdas); equivalentes a Veinticuatro Mil Doscientos Sesenta y Uno Punto Novecientos Ochenta y Nueve Metros Cuadrados (24,261.989 m.c.), en lindes por el NORTE, en una distancia de setenta y ocho punto cincuenta y tres metros lineales (78.53 m.l.), en distintas alineaciones, con Luis López Peña; por el ESTE, en una distancia de ciento sesenta y siete punto cincuenta y dos metros lineales (167.52m.l.), con servidumbre de la Autoridad de Energía Eléctrica y el solar número veintiséis (26); por el SUR en una distancia de doscientos once punto sesenta y ocho metros lineales (211.68 m.l.), en distintas alineaciones, con el Camino Municipal "Sector Canta Gallo"; y por el OESTE, en una distancia de doscientos dieciséis punto ochenta y un metros lineales (261.81 m.l.), en distintas alineaciones, con Familia Gil, Luis A. Cintrón, Carlos Rossy y Doctor Álvarez.---------------------
   Es remanente de la finca número quince mil cuatrocientos treinta y tres (15,433) que se halla inscrita al folio ciento nueve (109) del tomo quinientos noventa y seis (596) de Guaynabo, Puerto Rico. -----------------------

5. El balance de cancelación de la hipoteca que grava dicho inmueble a enero de 2017 es $84,670.14. Para el mes de febrero de 2017, el balance de cancelación sería $84,201.47.

6. Durante el matrimonio las partes adquirieron muebles del hogar con un valor de $4,175.00, los cuales fueron retenidos por la demandante.

7. Durante el matrimonio el demandado poseía una cuenta IRA de Oriental Bank, #NE-171140, la cual a la fecha del divorcio contenía la suma de $23,998.72.

8. Durante el matrimonio, la demandante poseía una cuenta IRA de Oriental Bank, #NE-170936, la cual a la fecha del divorcio contenía la suma de $9,163.55.

9. El demandado labora como agente del FBI y en su trabajo tiene dos tipos de retiro. El Thrift Savings Plan, donde tanto éste como el patrono realizan aportaciones y el Retiro Regular, del cual se

---

[2] Surge del expediente que, la prueba testifical consistió en los testimonios de la señora Gordo González, por la parte demandante y el señor Salichs Velázquez, por la parte demandada.

descuentan las aportaciones directamente del sueldo del demandado.

10. Las aportaciones que realizara el demandado al Thrift Savings Plan a diciembre de 2012 totalizan $137,445.32.

11. Las aportaciones que realizara el demandado a su retiro regular a diciembre de 2012 fueron calculadas estipuladas por las partes y totalizan $25,841.40.

12. La demandante trabaja para American Airlines, este último debido al proceso de reestructuración por quiebra que atravesó canceló su plan de retiro que en aquel momento era manejado a través de JP Morgan y la última aportación se realizó el 31 de diciembre de 2010.

13. A finales del 2012 se estableció un nuevo sistema de retiro en American Airlines, por lo que las aportaciones a la cuenta de retiro AA Retirement Stock Plans, a la fecha del mes de diciembre del 2012, sumaban $295.40.

14. Al momento del divorcio las partes tenían una cuenta de banco Pentagon Fed #2356792, el demandado figuraba como principal, con balance a diciembre 2012 de $1,153.56.

15. Al momento del divorcio las partes tenían una cuenta de banco USAA Federal Savings Bank #7343-8, el demandado figuraba como principal, con balance a diciembre de 2012 de $215.46.

16. Al momento del divorcio las partes tenían una cuenta de banco USAA Federal Savings Bank #7341-1, el demandado figuraba como principal, con balance a diciembre de 2012 de $363.16.

17. Al momento del divorcio las partes tenían una cuenta de banco USAA Federal Savings Bank #00635-0051-5, el demandado figuraba como principal, con balance a octubre 2012 de $21,337.96.

18. Al momento del divorcio las partes tenían una cuenta de banco USAA Federal Savings Bank #00635-0052-3, el demandado figuraba como principal, con balance a septiembre 2012 de $5,078.55.

19. Al momento del divorcio en el banco AA Credit Union existía una cuenta que originalmente llevaba el número de seguro social de la demandante quien es la principal en la cuenta, cuyos últimos cuatro números son 0049. En la actualidad la referida cuenta lleva el #814839890 y está dividida en las siguientes subcuentas:
    a. Subfix 01 Ashley- subcuenta principal de ahorros, al cierre del mes de diciembre 2012 tenía $4,905.26.
    b. Subfix 50 Checking- subcuenta de cheques, cuyo balance a diciembre 2012 era de $212.90.

20. El 12 de junio de 2001, la demandante recibió por concepto de herencia la cantidad de $124,584.81. Dicho dinero es ganancial y no procede su considerar los pormenores de su manejo para efectos de esta liquidación.

21. Al momento del divorcio las partes poseían dos (2) vehículos de motor. El demandado poseía un Hyundai Elantra del 2012, el cual las partes estipularon que su valor era de $17,970.00. Asimismo, la demandante poseía un Toyota Venza del 2010, el cual las partes estipularon que su valor era de $27,912.00.

22. Al momento de la separación, las partes pactaron que cada uno retendría su respectivo vehículo y pagaría el mismo.

23. Mediante Orden de Pensión Alimentaria Provisional emitida el 28 de septiembre de 2012, se le impuso al demandado la aportación de $218.66 para el pago de transportación de los menores. Ello correspondía a 2/3 partes de la mensualidad del auto retenido por la demandante.

24. Al momento de que el demandado dejara de residir en la propiedad conyugal, la demandante retuvo bienes personales del demandado y no fue hasta junio de 2016 que le entregó

algunos de ellos. Los bienes así retenidos incluyen ropa, efectos personales y prendas cuyo valor suma $3,500.00.

Acorde con lo anterior, el TPI concluyó que, luego de deducir la deuda hipotecaria cuyo balance asciende a $84,201.47, el caudal común sujeto a liquidación asciende a $481,866.77, el cual, distribuido en partes iguales equivale a $240,933.38 para cada parte, sujeto a los créditos aplicables.

Sobre el pago hipotecario, el TPI concedió a favor del Apelado un crédito de $1,096.00. Lo antes, fundamentado en que, durante los meses de agosto y septiembre de 2012, previo al Apelado asumir capacidad económica, el Apelante sufragó la totalidad de la hipoteca, es decir, dos (2) pagos de $1,096.00. Por consiguiente, y debido a que cada parte debe aportar el 50% de dicho gasto, atribuyó al Apelado un crédito de $1,096.00.

Además, el foro primario dictaminó que, la Apelante no tiene derecho al crédito reclamado del 50% del gasto hipotecario que pagó desde su cuenta personal, a partir de julio de 2013. Lo antes, tras el TPI constatar que, (aunque desde octubre de 2012 hasta agosto de 2014 la Apelante realizaba el pago total de la hipoteca desde su cuenta personal), durante ese tiempo, el Apelado estaba depositando en la cuenta de la Apelante su aportación de 2/3 partes de la deuda hipotecaria ó $739.00 mensuales. Debido a que, el 50% de $1,096.00 equivale a $548.00, el TPI atribuyó al Apelado la diferencia entre los $739.00 que pagó y los $548.00 que debió pagar, equivalentes a $191.00, multiplicados por los 23 meses que representan el periodo entre el mes de octubre de 2012 y agosto de 2014, para un crédito total de $4,393.00.[3]

Por último, adjudicó al Apelado otro crédito atinente al pago de un vehículo de motor. A esos efectos, hizo referencia al *Acta* que

---

[3] Surge del *Acta* del 24 de septiembre de 2012 (nota al calce núm. 1) que, "[a] dicha cantidad [$1,096.00] se le resta la porción que le corresponde aportar a mamá de $357.00. El promovido la pagará completa directamente al acreedor hipotecario y se le hará un crédito en la pensión alimentaria."

rindió la Examinadora de Pensiones Alimentarias (EPA), el 24 de septiembre de 2012, en donde asignó al Apelado un pago de $218.66 mensuales por concepto de "Carro". Lo antes, a pesar de que existía entre las partes una estipulación de que cada uno retendría su vehículo y lo continuaría pagando. En vista de que, desde el 1 de octubre de 2012 hasta el 18 de agosto de 2014 -equivalente a 23 meses-, el Apelado aportó $218.66 mensualmente para los gastos de carro de la Apelante que no le correspondía sufragar, el foro primario determinó que el Apelado ostenta un crédito de $5,029.18.

De otra parte, el foro primario otorgó a favor del Apelado un crédito de $3,500.00 por los artículos personales de él que la Apelante retuvo. El TPI ponderó que el Apelado requirió de la intervención del foro judicial para recuperar sus bienes. También hizo constar que le mereció credibilidad el testimonio del Apelado al declarar que la Apelante no los devolvió todos. En atención a lo anterior, concedió al Apelado el crédito reclamado a esos efectos.

Corolario de lo antes, mediante *Sentencia* de 27 de diciembre de 2023, el TPI dictaminó que el Apelado tiene a su favor un crédito total de $14,018.18. Luego de adjudicar dicha cuantía a la participación en el haber ganancial, el foro primario computó que la distribución será $226,410.72 a favor de la Apelante y $254,447.07 para el Apelado. Acorde con ello, y tras las partes haberse distribuido la totalidad de los bienes, ordenó a la Apelante pagar al Apelado $22,051.90.

En desacuerdo, la Apelante instó un petitorio de reconsideración al cual se opuso el Apelado. A esos efectos, el TPI celebró una vista argumentativa, luego de la cual, emitió la *Sentencia Enmendada* aquí impugnada. En ella, corrigió las cuantías para disponer que la participación de la Apelante es de $226,915.21, mientras que la del Apelado es de $254,951.56. Además, redujo a $21,547.43 el balance que le corresponde a la

Apelante pagar al Apelado, la cual acumulará un interés legal de 8.0% anual desde la fecha en que se dictó la *Sentencia* hasta su total satisfacción. Asimismo, denegó la imposición de temeridad que reclamó el Apelado.

Inconforme aun, la Apelante insta ante esta Curia el recurso de epígrafe y le imputa al foro primario lo siguiente:

> Erró el Tribunal de Primera Instancia al denegar a la apelante el crédito reclamado correspondiente al cincuenta por ciento (50%) de los pagos de la hipoteca realizados por esta a partir de julio de 2013 y concluir que no procedía el crédito reclamado por la apelante fundamentado en que parte del pago de la hipoteca estaba incluida en la pensión.

> Erró el Tribunal de Primera Instancia al conceder al apelado el crédito reclamado por concepto de pagos realizados al veh[í]culo de la apelante, tras concluir que, como parte de la pensión alimentaria, el apelado pagó parte del pago mensual del vehículo de la apelante.

El 13 de marzo de 2026, notificamos una *Resolución* en la cual ordenamos al Apelado dar cumplimiento a la Regla 22 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42. Además, ordenamos elevar los autos originales del caso de epígrafe, así como la prueba documental admitida ante el foro primario. Transcurrido el término permitido, el apelado no ha presentado su postura por lo que, según advertido, procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**A. Liquidación de la sociedad de bienes postganancial**

La sociedad legal de gananciales es el régimen económico supletorio que se impone a todo matrimonio celebrado en Puerto Rico, salvo que estos adopten un régimen económico distinto mediante otorgación de capitulaciones matrimoniales. 31 LPRA secs. 3551-3562; *Betancourt González v. Pastrana, Santiago,* 200 DPR 169, 177-178 (2018); *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 978 (2010); *Pagán Rodríguez v. Registradora,* 177 DPR 522, 529 (2009). Como se sabe, durante la existencia de la sociedad legal

de gananciales, los cónyuges son codueños y coadministradores de la totalidad del patrimonio matrimonial, sin distinción de cuotas. 31 LPRA secs. 3621-3701. En su consecuencia, este régimen económico tiene personalidad jurídica distinta a los cónyuges que la componen, pero a su vez, ambos poseen titularidad conjunta sobre el patrimonio ganancial. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 716 (2022); *Montalván v. Rodríguez*, 161 DPR 411 (2004).

La liquidación de la sociedad legal de bienes gananciales no surge en todo momento de manera simultánea a su disolución, toda vez que, al disolverse el matrimonio bajo este régimen, se crea una comunidad de bienes postganancial, compuesta por todos los bienes gananciales, en la cual ambos participan por partes iguales mediante cuotas independientes, alienables y homogéneas. *Matos Rivera v. Soler Ortiz,* 213 DPR 1044 (2024).

La comunidad de bienes postganancial existe indefinidamente hasta que se liquide la cosa común a solicitud de cualquiera de las partes. *Íd.*; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 269 (2021). Lo antes, debido a que ningún comunero está obligado a permanecer en la comunidad. *Matos Rivera v. Soler Ortiz,* supra. Sin embargo, cuando no es liquidada simultáneamente en el divorcio, adviene un periodo en el cual se mezclan y confunden provisionalmente los bienes de los excónyuges, ya sea porque se producen frutos, se saldan deudas, se obtienen ganancias o se sufren pérdidas y gastos. *Montalván v. Rodríguez*, supra. Mientras exista la comunidad de bienes postganancial, cada comunero está impedido de utilizar la cosa común para su exclusivo beneficio, sin pagar una adecuada compensación a la comunidad. *Matos Rivera v. Soler Ortiz,* supra.

Nuestro Código Civil dispone que cuando se disuelve la sociedad, ya sea por disolución del matrimonio o porque los cónyuges pactan un régimen económico matrimonial distinto, se

procederá a su liquidación, la cual comienza por un inventario de los activos y los pasivos que existen desde esa fecha. 31 LPRA sec. 3691; *Roselló Puig v. Rodríguez Cruz*, 183 DPR 81 (2011). Cabe resaltar que, en la adjudicación final de la participación que le corresponde a cada excónyuge, debe tomarse en consideración, de acuerdo con la evidencia sometida, si uno de los excónyuges puede interponer frente al otro un crédito por los cambios y las operaciones que ocurrieron en el haber común. *Montalván v. Rodríguez*, supra. Asimismo, al momento de decretar la liquidación de la sociedad legal de gananciales, procede que el tribunal de instancia tome en consideración la procedencia de la acción de reembolso. *Figueroa Robledo v. Rivera Rosa*, 149 DPR 565 (1999).

Ahora bien, antes de liquidar la comunidad de bienes postganancial, es necesario determinar cuáles bienes son privativos y cuáles son gananciales. *Montalván v. Rodríguez*, supra, pág. 457. De esa manera, se identifican los bienes privativos que corresponden a cada excónyuge y se establecen las responsabilidades imputables al caudal común, así como aquellas que se hayan utilizado para beneficio exclusivo de uno de los comuneros. *Íd.* Dicha liquidación requiere la formación de: (1) un inventario; (2) el avalúo; y (3) la tasación de los bienes. *Island Holdings v. Sucn. Hernández Ramírez*, 201 DPR 1026 (2019); *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 91 (1981).

El inventario comprenderá numéricamente, para colacionarlas, las cantidades que, habiendo sido pagadas por la sociedad legal de gananciales, deban rebajarse del capital de los excónyuges. 31 LPRA sec. 3692. Pagadas las deudas y las cargas y obligaciones de la sociedad, se liquidará y pagará el capital de los excónyuges, hasta donde alcance el caudal inventariado. 31 LPRA sec. 3694. Una vez realizadas las deducciones del caudal inventariado, ese remanente constituye el haber de la sociedad de

gananciales. 31 LPRA sec. 3695. El remanente líquido de los bienes gananciales se dividirá por mitad entre los excónyuges o sus respectivos herederos. 31 LPRA sec. 3697.

**III.**

En su recurso, la Apelante argumenta como primer error que, el foro primario incidió al denegarle el crédito correspondiente a 1/3 del pago de la hipoteca. En particular señala que, a partir de septiembre de 2014, luego de que su hija mayor advino a la mayoría de edad, ha asumido 2/3 partes del pago hipotecario. Añade que, su participación no debe exceder del 50% del gasto hipotecario. Como segundo error, la Apelante cuestiona la determinación del TPI de acreditar a favor del Apelado unos pagos sobre el vehículo de motor de la Apelante. A su entender, el Apelado pretende imputar como créditos contra el haber ganancial ciertos pagos realizados por concepto de pensión alimentaria.

Luego de evaluar y aquilatar la prueba documental estipulada,[4] y escuchados los testimonios de ambas partes, el foro primario resolvió que el Apelado tiene derecho a un crédito de $14,018.18, los cuales desglosó en: $3,500.00 como reembolso de los artículos personales; $5,029.18 por unos pagos al carro de la Apelante; y $1,096.00 más $4,393.00 por excesos en el pago hipotecario. En su consecuencia, ordenó a la Apelante pagar al Apelado $21,547.43, más el interés legal de 8.0%, sin que proceda la temeridad.

Nótese que, las partes no liquidaron la sociedad legal de gananciales simultáneamente con el divorcio. Por consiguiente, en el periodo posterior a la disolución del vínculo matrimonial, se entremezclaron provisionalmente los bienes de los excónyuges.

---

[4] Las partes estipularon los siguientes documentos: Exhibit 1-Planilla de Información Personal y Económica del 17 de noviembre de 2012; Exhibit 2-Planilla de Información Personal y Económica del 16 de octubre de 2012; Exhibit 3-Certificación de Artículos Recibidos; Exhibit 4-OPA 2012-005703 del 5 de octubre de 2012.

Resulta necesario destacar que, surge del *Acta* que rindió la EPA, el 24 de septiembre de 2012, y de la *Oposición a Solicitud de Sentencia Sumaria según Presentada por la Demandante y Solicitud de Sentencia Sumaria a Favor del Demandado* que forman parte de los autos originales que, el Apelado asumió capacidad durante la vista de alimentos ante la EPA, celebrada el 17 de septiembre de 2012.

Aclarado lo anterior, observamos que, el foro primario incluyó en su pronunciamiento las aportaciones de ambas partes a las deudas gananciales, reconoció la existencia de partidas privativas y cumplió con los procesos que establece nuestro ordenamiento jurídico aplicable a la liquidación de una comunidad de bienes post ganancial. Distinto a lo que argumenta la Apelante, el TPI no convirtió los pagos por concepto de pensión alimentaria en créditos a favor del Apelado en la liquidación de bienes.

En particular, surge de la *Sentencia Enmendada* impugnada y de los autos originales que, las partes llevaron a cabo un extenso descubrimiento de prueba. También se desprende que, el Apelado cubrió la totalidad del pago hipotecario los meses de agosto y septiembre de 2012, y que realizó pagos en exceso del 50% de su participación en la deuda hipotecaria, entre octubre de 2012 y agosto de 2014, cuyo cómputo asciende a $5,489.00.

Se colige, además, que las partes habían estipulado que cada cual retendría y pagaría sus vehículos de motor. Sin embargo, el *Acta* de la EPA del 24 de septiembre de 2012 refleja que le impuso al Apelado una aportación de $218.66 mensuales por concepto de "Carro", lo cual sufragó durante veintitrés (23) meses, desde octubre de 2012 hasta agosto de 2014, equivalente a $5,029.18. Por último, el TPI ordenó a la Apelante pagar $3,500.00 al Apelado como reembolso por los artículos personales que retuvo.

Según la Apelante, los gastos de vivienda deben distribuirse proporcionalmente, basado en el número de residentes y

alimentistas, a tenor del Artículo 17(3)(d) del Reglamento Núm. 9535, *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico* (Guías), aprobado el 16 de febrero de 2024.[5] Lo antes, para cuestionar la procedencia del crédito de $4,393.00 a favor del Apelado. Sin embargo, conforme a la normativa de *Díaz Rodríguez v. García Neris,* 208 DPR 706, 719 (2022), estas Guías son innecesarias e inaplicables para el cómputo de las pensiones alimentarias cuando un alimentante acepta su capacidad económica, tal como ocurrió en el presente caso.[6]

Sobre tales bases y contrario a lo expuesto por la Apelante, el cómputo hipotecario fue correctamente ajustado por el TPI de manera que ambas partes pagaran el 50% de la deuda hipotecaria, sin que la Apelante lograra demostrar que su aportación por tal concepto excedió del 50% del total. Además, tal como dispuso el Apelado, al oponerse al petitorio sumario de la Apelante, esta última no incluyó en la *Demanda* alegaciones relacionadas a un crédito hipotecario, lo cual le impide instar una reclamación a esos efectos.

Evaluada la totalidad del expediente ante nos, no se desprende que el foro primario se haya apartado de las normas judiciales aplicables en la adjudicación justiciera del caso ante su consideración. Añádase que, la apelante no nos ha puesto en posición para revertir el pronunciamiento judicial por razones atribuibles a presunta arbitrariedad o error en derecho.

---

[5] El citado inciso dispone, en lo pertinente: [s]e toma en consideración la cantidad mensual que la persona custodia paga o tiene que pagar por concepto de renta o hipoteca de la vivienda en la cual residen los alimentistas, o cualquier cantidad que la persona custodia aporta o tiene que aportar por la vivienda en la que residen estos. La cantidad mensual se divide por el número de personas que reside en la vivienda para obtener una cantidad per cápita que se multiplica por el número de alimentistas para los cuales se está computando la pensión alimentaria. El resultado es la cuantía por la cual la persona custodia y la no custodia deberán responder proporcionalmente.
[...]
[6] Cuando un alimentante acepta capacidad económica, procede entonces que pague el 100% de los gastos razonables de los menores, que incluyen alimentación, utilidades, transportación, entretenimiento y vestimenta. *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 571 (2012). Sin embargo, los gastos de educación y vivienda constituyen gastos suplementarios que se calculan de forma independiente. *Íd.*, págs. 563-564.

Por los fundamentos expuestos, resolvemos que el TPI adjudicó correctamente la liquidación de bienes post ganancial en la presente causa. Los errores señalados no se cometieron.

**IV.**

En virtud de lo anterior, confirmamos la *Sentencia Enmendada* aquí impugnada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones